IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-386

 Filed: 7 August 2018

Craven County, No. 03 CRS 53794

STATE OF NORTH CAROLINA

 v.

THOMAS EARL GRIFFIN, Defendant.

 Appeal by Defendant from order entered 1 September 2016 by Judge Benjamin

G. Alford in Craven County Superior Court. Heard in the Court of Appeals 19

September 2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph
 Finarelli, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R.
 Grant, for Defendant-Appellant.

 INMAN, Judge.

 In light of this Court’s recent decision in State v. Grady, __ N.C. App. __, __

S.E.2d __, COA17-12, 2018 WL 2206344 (15 May 2018) (“Grady II”),1 absent any

evidence that satellite-based monitoring (“SBM”) is effective to protect the public

from sex offenders, the trial court erred in imposing SBM on a sex offender for thirty

years. We therefore reverse the trial court’s order.

 1In the interest of clarity, we refer to this cited decision as Grady II and refer to the United
State Supreme Court’s preceding and related decision as Grady I.
 STATE V. GRIFFIN

 Opinion of the Court

 I. FACTUAL AND PROCEDURAL BACKGROUND

 On 29 January 2004 in Craven County Superior Court, before the Honorable

Benjamin G. Alford, Thomas Earl Griffin (“Defendant”) proffered an Alford plea, as

a part of a negotiated plea agreement, to the charge of first-degree sex offense with a

child. As a part of the plea agreement, the court dismissed a charge of taking indecent

liberties with a child.

 The State’s recitation of the facts during the plea hearing stated that

Defendant was the live-in boyfriend of the victim’s mother. The victim, who was

eleven years old at the time of the initial disclosure, stated that Defendant had “been

messing with her for the past three years,” describing penile and digital penetration,

as well as penetration with the use of a foreign object. Defendant made a full

confession, admitting all of what the victim reported. The court sentenced Defendant

to a prison term of 144 to 182 months2 and recommended that while incarcerated

Defendant participate in the SOAR program (a sex offender treatment program).

 Defendant was released from prison eleven years later, in June 2015. On 29

September 2015, the Department of Public Safety informed Defendant that his was

a reportable sex offense as defined by N.C. Gen. Stat. § 14-208.6(4) and that he could

be required to enroll in an SBM program pursuant to N.C. Gen. Stat. § 14-

 2 First-degree sex offense is a B1 felony punishable by a maximum sentence of life
imprisonment without parole for offenders with at least a Level V prior record level. Defendant, whose
only prior convictions were for driving without a license and registration and fishing without a license,
was a Level I offender. See N.C. Gen. Stat. § 15A-1340.17 (2017).

 -2-
 STATE V. GRIFFIN

 Opinion of the Court

208.40(a)(2), as determined by a court. Defendant was instructed to appear for a

“bring-back” hearing to determine whether he would be required to participate in an

SBM program.

 The bring-back hearing was conducted on 16 August 2016, in Craven County

Superior Court, again before Judge Alford. The State introduced into evidence a

“Revised STATIC-99 Coding Form” (“Static-99”), an actuarial report designed to

estimate the probability of sex offender recidivism, which placed Defendant in the

“moderate-low” category, above the “low” and below the “moderate-high” and “high”

risk categories.3

 The State also called as a witness Probation and Parole Officer Caitlin Allen,

who supervised Defendant and other sex offenders. Based on her review of

Defendant’s prison records and her own supervision, Officer Allen testified that while

in prison, Defendant had not completed the SOAR program and that, since his release

from prison, Defendant had not committed any criminal offenses or violated the terms

of his probation, including restrictions on his location.

 Officer Allen also described the physical dimensions of the SBM tracking

device, how it is worn, and its general function. The State presented no evidence

regarding how information gathered through SBM of Defendant would be used. The

 3Though unchallenged before the trial court, Defendant argues on appeal that his Static-99
was miscalculated and that his risk category should have been “low” risk.

 -3-
 STATE V. GRIFFIN

 Opinion of the Court

State presented no evidence regarding whether, or to what degree, SBM would be

effective in protecting the public from Defendant committing another sex offense.

 The prosecutor stated her belief that Defendant could be ordered to participate

in an SBM program for a term of years, but not life, and “ask[ed] that [the court] find

that this was a – that the Satellite Based Monitoring [was] a reasonable search.” The

prosecutor noted that the victim was a young child, eighteen years younger than

Defendant, and that by virtue of his living arrangement with the victim’s mother,

Defendant held a position of trust in the victim’s household. In response, counsel for

Defendant argued that based on his “moderate to low level – level of risk” and his

compliance with all terms of his probation, “this level of intrusion” was not

warranted. The trial court took the matter under advisement without commenting

on the merits of either the State’s or Defendant’s arguments.

 On 1 September 2016, the trial court entered a form order finding that

Defendant had been convicted of a reportable offense as defined by N.C. Gen. Stat. §

14-208.6 and involving the physical, mental, or sexual abuse of a minor. The order

also found that Defendant was not classified as a sexually violent predator, was not

a recidivist, and was not convicted of an aggravated offense. The trial court also

entered, on an attached form, the following additional findings and a conclusion of

law:

 1. The defendant failed to participate in and[/]or
 complete the SOAR program.

 -4-
 STATE V. GRIFFIN

 Opinion of the Court

 2. The defendant took advantage of the victim’s young
 age and vulnerability: the victim was 11 years old the
 defendant was 29 years old.

 3. The defendant took advantage of a position of trust;
 the defendant was the live-in boyfriend of the victim’s
 mother. The family had resided together for at least four
 years and [defendant] had a child with the victim’s mother.

 4. Sexual abuse occurred over a three year period of
 time.

 The court has weighed the Fourth Amendment right of the
 defendant to be free from unreasonable searches and
 seizures with the publics [sic] right to be protected from sex
 offenders and the court concludes that the publics [sic]
 right of protection outweighs the “de minimis” intrusion
 upon the defendant’s Fourth Amendment rights.

 Based on these findings and conclusion, the trial court ordered Defendant to

register as a sex offender and enroll in SBM for a period of thirty years.

 Defendant appeals.

 II. ANALYSIS

 Defendant does not challenge being ordered to register as a sex offender,4 but

argues that the trial court violated his Fourth Amendment rights by ordering him to

submit to continuous SBM for thirty years. After careful review of the record and

applicable law, we are compelled to agree.

 4As a sex offender, Defendant is subject to a reporting requirement where by statute he must
maintain registration with the sheriff of the county in which he resides. See N.C. Gen. Stat. § 14-
208.7(a) (2017).

 -5-
 STATE V. GRIFFIN

 Opinion of the Court

 A. Preservation of Issue

 “Our appellate courts will only review constitutional questions raised and

passed upon at trial.” State v. Mills, 232 N.C. App. 460, 466, 754 S.E.2d 674, 678

(2014) (citations omitted).

 The State argues that Defendant waived the sole issue he raises on appeal—

the constitutionality of the order directing him to enroll in the SBM program—

asserting “Defendant made no Fourth Amendment challenge either before or at the

SBM determination hearing.” We reject this argument because the question of

whether Defendant’s enrollment in an SBM program constituted a reasonable search

was directly raised and passed upon by the trial court.

 During the bring-back hearing, the prosecutor “ask[ed] that [the court]

find . . . Satellite Based Monitoring [was] a reasonable search.” In response,

Defendant argued that “this level of intrusion” was not warranted. In its order

directing Defendant to enroll in a SBM program, the trial court specifically addressed

“the Fourth Amendment right of . . . defendant to be free from unreasonable searches

. . . [and] the publics [sic] right to be protected” and concluded that the public’s right

to be protected outweighed Defendant’s privacy right.

 We hold that Defendant’s appeal presents a constitutional question raised and

passed upon by the trial court, see id. at 466, 754 S.E.2d at 678, and is now properly

before this Court.

 -6-
 STATE V. GRIFFIN

 Opinion of the Court

 B. Standard of Review

 In reviewing [the superior court’s order], we are strictly
 limited to determining whether the trial judge’s underlying
 findings of fact are supported by competent evidence, in
 which event they are conclusively binding on appeal, and
 whether those factual findings in turn support the judge’s
 ultimate conclusions of law.

State v. Williams, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (citation and

quotation marks omitted). This Court reviews “the trial court’s conclusions of law for

legal accuracy and to ensure that those conclusions reflect a correct application of law

to the facts found.” State v. Singleton, 201 N.C. App. 620, 626, 689 S.E.2d 562, 566

(2010) (citation and quotation marks omitted). “We will therefore review the trial

court’s order to ensure that the determination that ‘defendant requires the highest

possible level of supervision and monitoring’ ‘reflects a correct application of law to

the facts found.’ ” State v. Kilby, 198 N.C. App. 363, 367, 679 S.E.2d 430, 432 (2009)

(citations and brackets omitted).

 Williams, Singleton, Kilby, and a plethora of other decisions regarding SBM

were rendered by this Court and the North Carolina Supreme Court prior to the

decision by the United States Supreme Court in Grady v. North Carolina, 575 U.S.

___, 191 L. Ed. 2d 462 (2015) (per curiam) (“Grady I”), which held that North

Carolina’s SBM program effects a search subject to protections of the Fourth

Amendment of the United States Constitution.

 -7-
 STATE V. GRIFFIN

 Opinion of the Court

 “The standard of review for alleged violations of constitutional rights is de

novo.” State v. Graham, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009).

 C. Fourth Amendment to the United States Constitution

 The Fourth Amendment to the United States Constitution sets forth “[t]he

right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures[.]” U.S. Const. amend. IV. “The touchstone of

the Fourth Amendment is reasonableness.” State v. Grice, 367 N.C. 753, 756, 767

S.E.2d 312, 315 (2015).

 Grady I did not invalidate all SBM orders, noting that “[t]he Fourth

Amendment prohibits only unreasonable searches.” Grady I, 575 U.S. at ___, 191 L.

Ed. 2d at 462 (emphasis in original). Grady I vacated the SBM order and remanded

the case to the trial court to determine whether SBM was reasonable based on the

totality of the circumstances, “including the nature and purpose of the search and the

extent to which the search intrudes upon reasonable privacy expectations.” Id. at

___, 191 L. Ed. 2d at 462.

 Following the defendant’s appeal from a trial court hearing on remand from

Grady I, this Court in Grady II established new criteria for court orders allowing the

government to track the location of sex offenders by SBM. Grady II, __ N.C. App. at

__, __ S.E.2d at __, slip op. at 8. Following earlier decisions by this Court, Grady II

held that the State bears the burden of proving that SBM is reasonable. Id. at __, __

 -8-
 STATE V. GRIFFIN

 Opinion of the Court

S.E.2d at __, slip op. at 8; see also State v. Blue, 246 N.C. App. 259, 265, 783 S.E.2d

524, 527 (2016). And, for the first time in any North Carolina appellate court decision

regarding SBM, Grady II held that absent evidence that SBM is effective in serving

the State’s compelling interest in protecting the public from sex offenders, the State

failed to meet its burden to prove that SBM is reasonable as required by the Fourth

Amendment. Grady II, __ N.C. App. at __, __ S.E.2d at __, slip op. at 8.

 D. Evidence that SBM is Effective to Protect the Public from Sex Offenders

 Following the United States Supreme Court’s remand order in Grady I and a

new SBM hearing in the trial court, this Court held in Grady II that the trial court

violated the Fourth Amendment rights of the defendant in that case, a recidivist sex

offender, by ordering lifetime SBM absent any evidence that SBM is effective to

protect the public against sex offenses. __ N.C. App. at __, __ S.E.2d at __, slip op. at

8. This Court noted that although the SBM program had been in effect for

approximately a decade prior to the hearing on remand from the United States

Supreme Court, “the State failed to present any evidence of its efficacy in furtherance

of the State’s undeniably legitimate interests” and held that in the absence of

evidence regarding the efficacy of SBM, “we are compelled to conclude that the State

failed to carry its burden” of proving that SBM was reasonable in that case. Id. at __,

__ S.E.2d at __, slip op. at 8.

 -9-
 STATE V. GRIFFIN

 Opinion of the Court

 In this case, as in Grady II, the State presented no evidence regarding the

efficacy of the SBM program. The State argues that it was unnecessary to present

such evidence in order to establish its interest in protecting the public from sex

offenders5 because “one cannot discount the possibility that an offender’s awareness

his location is being monitored does in fact deter him from committing additional

offenses.” The State further relies on decisions from other jurisdictions stating that

SBM curtails sex offender recidivism.

 Our dissenting colleague, who also dissented in Grady II, cites the State’s

Memorandum in Support of Reasonableness of Satellite Based Monitoring submitted

to the trial court, noting “the memo outlines empirical evidence and argument as to

the statistical likelihood that a sex offender would be a recidivist.” The

memorandum, however, cited only other court decisions, not evidence, and it did not

attach empirical or statistical reports. This approach has been rejected by the United

States Court of Appeals for the Fourth Circuit in a decision regarding the

constitutionality of premises restrictions for sex offenders:

 The State tries to overcome its lack of data, social science
 or scientific research, legislative findings, or other
 empirical evidence with a renewed appeal to anecdotal case
 law, as well as to “logic and common sense.” But neither
 anecdote, common sense, nor logic, in a vacuum, is
 sufficient to carry the State’s burden of proof.

 5 The State also argues that North Carolina’s SBM program should be evaluated as a “special
needs” program. But the record reflects that the State failed to present this argument to the trial
court. “Since the State failed to advance this constitutional argument below, it is waived.” Grady II,
__ N.C. App. at __, __ S.E.2d at __, slip op. at 3.

 - 10 -
 STATE V. GRIFFIN

 Opinion of the Court

Doe v. Cooper, 842 F.2d 833, 846 (4th Cir. 2016) (citations omitted).

 Decisions from other jurisdictions relied upon by our dissenting colleague—

and by the State—holding that SBM is generally regarded as effective in protecting

the public from sex offenders are not persuasive in light of this Court’s binding

decision in Grady II that the State must present some evidence to carry its burden of

proving that SBM actually serves that governmental interest.6

 Our dissenting colleague asserts that requiring the State to introduce evidence

that SBM is effective in every SBM hearing, regardless of evidence regarding other

relevant circumstances, exceeds the holding of the United States Supreme Court in

Grady I. However, we are bound by this Court’s decision in Grady II and cannot hold

otherwise. See In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

 Our dissenting colleague also asserts that our decision exceeds the holding in

Grady II by requiring, as a threshold in every SBM case, evidence to support a finding

by the trial court that SBM will serve the government purpose of curbing recidivism.

But following the reasoning of this Court in Grady II, unless SBM is found to be

effective to actually serve the purpose of protecting against recidivism by sex

 6Also, in contrast to the trial court’s order reviewed in Grady II, which relied upon some of
those decisions, the trial court’s order in the case now before us did not refer to any case authorities,
or empirical or statistical reports referenced in case authorities, or otherwise. Nor did the trial court
indicate in the SBM hearing that it had reviewed the State’s legal memorandum or relied upon any of
the authorities cited therein.

 - 11 -
 STATE V. GRIFFIN

 Opinion of the Court

offenders, it is impossible for the State to justify the intrusion of continuously

tracking an offender’s location for any length of time, much less for thirty years.

 As noted by this Court in Grady II, and by the United States Supreme Court,

the continuous and dynamic location data gathered by SBM is far more intrusive than

the static information gathered as a result of sex offender registration. “ ‘GPS

monitoring generates a precise, comprehensive record of a person’s public movements

that reflects a wealth of detail about her familial, political, professional, religious,

and sexual associations.’ ” Grady II, __ N.C. App. at __, __ S.E.2d at __, slip op. at 6

(quoting United States v. Jones, 565 U.S. 400, 415, 181 L.Ed.2d 911, 924 (Sotomayor,

J., concurring)). In one aspect, the intrusion of SBM on Defendant in this case is

greater than the intrusion imposed in Grady II, because unlike an order for lifetime

SBM, which is subject to periodic challenge and review, an order imposing SBM for a

period of years is not subject to later review by the trial court. See N.G. Gen. Stat. §

14-208.43 (removal procedure available only for lifetime SBM participants).

 We also are bound by this Court’s holding in Grady II that when the State has

presented no evidence that could possibly support a finding necessary to impose SBM,

the appropriate disposition is to reverse the trial court’s order rather than to vacate

and remand the matter for re-hearing. __ N.C. App. at __, __ S.E.2d at __, slip op. at

8 (emphasizing “the State will have only one opportunity to prove that SBM is a

 - 12 -
 STATE V. GRIFFIN

 Opinion of the Court

reasonable search of the defendant”) (citing State v. Greene, __ N.C. App. __, __, 806

S.E.2d 343, 345 (2017)).

 E. Defendant’s Current Threat of Reoffending

 This Court in Grady II also held that a trial court cannot impose SBM without

“sufficient record evidence to support the trial court’s conclusion that SBM is

reasonable as applied to this particular defendant.” __ N.C. App. at __, __ S.E.2d at

__, slip op. at 6 (emphasis in original). The Court “reiterate[d] the continued need for

individualized determinations of reasonableness at Grady hearings.” Id. at __, __

S.E.2d at __, slip op. at 8.

 Here, unlike in Grady II, the State introduced in evidence Defendant’s Static-

99 risk factor assessment, which reflected that he was a “moderate-low risk” for

reoffending. In addition, the State presented evidence, and the trial court found as a

fact, that Defendant had violated a position of trust in committing his offense and

had failed to complete or participate in a court ordered SOAR program for sex

offenders while incarcerated. The SBM order did not reflect in any finding or

conclusion whether the trial court determined that Defendant’s betrayal of trust or

failure to complete or participate in SOAR increased his likelihood of recidivism.

 Pre-Grady I, this Court held that a Static-99 moderate-low risk assessment,

without additional evidence independent of factors considered in the assessment, was

insufficient to support the imposition of SBM on a sex offender. Kilby, 198 N.C. App.

 - 13 -
 STATE V. GRIFFIN

 Opinion of the Court

at 370, 679 S.E.2d at 434; State v. Thomas, 225 N.C. App. 631, 634, 741 S.E.2d 384,

387 (2013) (holding that statutory language allowing the trial court to make

additional findings is to permit the court to consider factors not part of the Static-99

assessment).

 In light of our holding that the State failed to prove that SBM is a reasonable

search compliant with the Fourth Amendment because it presented no evidence that

the SBM program is effective to serve the State’s interest in protecting the public

against sex offenders, we do not reach the issue of whether the trial court’s order or

the State’s evidence presented regarding Defendant’s individual threat of reoffending

meets the minimum constitutional standard required by Grady I and Grady II.

 CONCLUSION

 We hold that because the State failed to present any evidence that SBM is

effective to protect the public from sex offenders, this Court’s decision in Grady II

compels us to reverse the trial court’s order requiring Defendant to enroll in SBM for

thirty years.

 REVERSED.

 Judge DAVIS concurs.

 Judge BRYANT dissents in separate opinion.

 - 14 -
 No. COA17-386 – State v. Griffin

 BRYANT, Judge, dissenting.

 By requiring our trial courts to find the efficacy of SBM in curbing sex offender

recidivism in order to satisfy Fourth Amendment protections against unreasonable

searches in the context of SBM, the majority would impose a standard other than is

required by Fourth Amendment jurisprudence. I respectfully dissent.

 “The touchstone of the Fourth Amendment is reasonableness.” State v. Grice,

367 N.C. 753, 756, 767 S.E.2d 312, 315 (2015) (citation omitted). “The reasonableness

of a search depends on the totality of the circumstances, including the nature and

purpose of the search and the extent to which the search intrudes upon reasonable

privacy expectations.” State v. Grady, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, No.

COA17-12, 2018 WL 2206344, slip op. at 2 (N.C. Ct. App. May 15, 2018) (hereinafter

“Grady II”) (quoting Grady v. North Carolina, 575 U.S. ___, ___, 191 L. Ed. 2 459, 462

(2015) (per curiam)).

 In support of its reasoning, the majority relies on this Court’s 2018 Grady II

opinion holding that the State failed to carry its burden of proving that SBM was

reasonable. In addition to outlining categories of evidence the State failed to present

(e.g., “specific interest in monitoring defendant,” “general procedures used to monitor

unsupervised offenders,” id. at ___, ___ S.E.2d at ___, slip op. at 7), the Grady II

majority also stated, “the State failed to present any evidence of [SBM’s] efficacy in

furtherance of the State’s undeniably legitimate interests.” Id. at ___, ___ S.E.2d at

___, slip op. at 8.
 STATE V. GRIFFIN

 BRYANT, J., dissenting

 I would note that the majority in Grady II drew this conclusion in the context

of a discussion of the defendant’s diminished expectations of privacy. See id. at ___,

___ S.E.2d at ___, slip op. at 4 (“The Fourth Amendment does not protect all subjective

expectations of privacy, but only those that society recognizes as legitimate.” (quoting

Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 654, 132 L. Ed. 2d 564, 575 (1995)).

The Court observed that “it [was] unclear whether the trial court considered the

legitimacy of [the] defendant’s privacy expectation . . . [and] the extent to which the

search intrude[d] upon reasonable expectations of privacy.” Id. at ___, ___ S.E.2d at

___, slip op. at 5 (citation omitted). In regard to continuous GPS monitoring, the

Grady II opinion states that “[a]lthough the State has no guidelines for the

presentation of evidence at Grady hearings, . . . there must be sufficient record

evidence to support the trial court’s conclusion that SBM is reasonable as applied to

[the] particular defendant.” Id. at ___, ___ S.E.2d at ___, slip op. at 6. On the record

before it, the Court observed that “the State presented no evidence of [the]

defendant’s current threat of reoffending and . . . the circumstances of his convictions

d[id] not support the conclusion that lifetime SBM [was] objectively reasonable.” Id.

 In the absence of evidence describing the defendant’s likelihood of recidivism,

the Court turned its focus to whether the State presented “any evidence concerning

its specific interests in monitoring [the] defendant.” Id. at ___, ___ S.E.2d at ___, slip

op. at 7. The Court noted that “the State failed to present any evidence of [SBM’s]

 2
 STATE V. GRIFFIN

 BRYANT, J., dissenting

efficacy in furtherance of the State’s undeniably legitimate interest,” in opposition to

the defendant’s proffer of “multiple reports . . . rebutting the widely held assumption

that sex offenders recidivate at higher rates that other groups.” Id. at ___, ___ S.E.2d

at ___, slip op. 8. While the Grady II Court majority concluded “that the State failed

to carry its burden,” id., the Court did not state or imply that the State’s burden of

proof to establish that SBM was reasonable included establishing the efficacy of SBM

in curbing sex offender recidivism for every SBM case; it was simply a consideration

amongst the totality of the circumstances.

 In the instant case, the majority bases the reasonableness of the SBM search

of defendant Griffin solely on its holding that the State presented no evidence of the

efficacy or effectiveness of the program.7 Such reasoning unnecessarily imposes upon

trial courts a standard other than that which is required by Fourth Amendment

jurisprudence: to determine whether a search is reasonable based on “the totality of

the circumstances, including the nature and purpose of the search and the extent to

which the search intrudes upon reasonable privacy expectations.” Id. at ___, ___

S.E.2d at ___, slip op. 2 (quoting Grady, 575 U.S. at ___, 191 L. Ed. 2d at 462).

Further, by making that standard a necessary finding, as opposed to the broader

standard which considers a defendant’s expectation of privacy and the extent to which

 7“We hold that because the State failed to present any evidence that SBM is effective to protect
the public from sex offenders, this Court’s decision in Grady II compels us to reverse the trial court’s
order requiring Defendant to enroll in SBM for thirty years.”

 3
 STATE V. GRIFFIN

 BRYANT, J., dissenting

the search intrudes upon reasonable expectations of privacy, the majority forecloses

the ability of the trial court to determine the reasonableness of a search based on the

totality of circumstances.

 Having disagreed with the majority’s opinion that the holding in Grady II is

based on lack of evidence of the efficacy of the SBM program, I must note that the

record in the instant case does contain such evidence. In the record proper is a

document entitled “Memorandum In Support of The Reasonableness of [SBM].” The

memo outlines empirical evidence and argument as to the statistical likelihood that

a sex offender would be a recidivist. However, this evidence would likely not meet

the majority’s standard which seems to require statistical data on the recidivism

rates of North Carolina offenders in order to determine the efficacy of the SBM

program.

 As I noted in my dissent in Grady II, while the presentation of evidence

regarding the rate of recidivism by sex offenders “may be a valid legislative argument,

I do not believe it to be a persuasive argument that defendant’s participation in the

SBM program, when viewed as a search, was unreasonable.” Id. at ___, ___ S.E.2d

at ___, slip op. 11 n.11.

 For the reasons stated above, I respectfully dissent.

 4